**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LOWER MERION SCHOOL DISTRICT, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **CIVIL ACTION NO. 2:25-cv-5761** |
| **v.** | : | |
| | : | |
| A.W. and D.W, individually and on behalf of I.W., their minor child | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

The Lower Merion School District ("Plaintiff" or "the District"), by and through its undersigned counsel, brings this civil action by filing this Complaint pursuant to the Individuals with Disabilities Education Act, as amended, 20 U.S.C. § 1400 *et. seq.* ("IDEA"),[1] and its implementing regulations at 34 CFR Part 300. The District seeks relief from the administrative special education due process hearing Decision and Order of the Pennsylvania Office for Dispute Resolution ("ODR") File No. 30599-24-25 KE, dated July 9, 2025, and avers the following:

## PARTIES

1. Plaintiff is a public school district in the Commonwealth of Pennsylvania with an address of 301 East Montgomery Avenue, Ardmore, Pennsylvania 19003.

2. Plaintiff is a recipient of federal funds under IDEA and as such as is a Local Education Agency ("LEA") as defined under the IDEA. *See* 20 U.S.C. § 1401(19) and 34 C.F.R. § 300.28.

---

[1] Parents filed the special education due process complaint at issue alleging claims arising under both the IDEA and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("Section 504") as well as corresponding regulations of the Pennsylvania Code, Title 22 Chapters 14 and 15. The administrative decision was decided entirely under the IDEA, and therefore, the District also files this Complaint based solely upon the IDEA.

1

3. Defendant, I.W., ("Student") is a 6-year-old, early elementary student.

4. I.W. is a "child with disability" as defined under the IDEA and is eligible for special education and related services under the IDEA disability categories of Other Health Impairment ("OHI"), Speech or Language Impairment ("SLI") and Visual Impairment, including Blindness.

5. Defendants A.W. and D.W. are the parents of Student ("Parents").

6. Defendants have been residents of the District at all relevant times.

7. The District has been the LEA for Student at all relevant times.

## JURISDICTION

8. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, specifically the IDEA, and the District has timely filed this appeal to the July 9, 2025 Decision and Order.

9. Plaintiff seeks relief in the form of reversal of the administrative Hearing Officer's Decision and Order for ODR File No. 30599-24-25 KE, which awarded tuition reimbursement to Parents for the at-home program that they developed for Student. *See* Redacted version of the July 9, 2025 Decision and Order attached hereto as Exhibit 1.

10. This Court has subject matter jurisdiction over Plaintiff's claim and the relief sought herein is in within the power of this Court to grant. *See* 20 U.S.C. § 1415(i)(2)(A)&(3)(A); 34 C.F.R. § 300.516.

11. This Court had personal jurisdiction over the parties. Defendants are individuals whose residence is in the Eastern District of Pennsylvania.

**VENUE**

12. Venue is proper in this Court, the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims set forth herein occurred within the jurisdiction of this Court.

13. Furthermore, the parties are all located within Montgomery County, Pennsylvania, which is in the Eastern District of Pennsylvania.

**FACTUAL ALLEGATIONS**

**Background**

14. I.W. has been diagnosed with a seizure disorder, global developmental delay, and Cortical Visual Impairment ("CVI"), a congenital or acquired brain-based visual impairment with onset in childhood and associated with unique visual and behavioral characteristics.

15. I.W. demonstrates delays in cognitive, communication, social-emotional, motor and adaptive skills.

16. I.W. exhibits a variety of behaviors, including self-injurious behaviors, as a means of communication. Student's behaviors are tied directly to both visual strengths and needs and sensory needs.

17. I.W. can navigate public spaces and regularly visits stores, restaurants, playgrounds, and other locations in the community. Student has also attended horse therapy and summer camp. Student travels frequently with her family to other states and internationally.

18. I.W. received Early Intervention ("EI") programming through the Montgomery County Intermediate Unit ("MCIU") that included a Pre-K placement at the Overbrook School for the Blind ("Overbrook") beginning in September 2023.

19. I.W. had an EI Individualized Education Program ("IEP") while at Overbrook.

3

20. In November 2023, Parents sought out a private evaluation of Student for additional recommendations for interventions. This evaluation occurred in the school setting.

21. In January, the private evaluation report was completed and stated that "[d]espite [Student] having only attended school since September of 2023, marking her first exposure to a classroom setting, [Student] appears at ease within her school environment." Additionally, Student's home feeding therapist observed that Student had adjusted "beautifully" to mealtime routines. Parents did not share the report until the due process hearing.

22. On March 7, 2024, Parents unilaterally withdrew Student and began providing private supports and services in the home.

23. In May 2024, the MCIU and Parents entered into a settlement agreement under which the MCIU agreed to reimburse Parents for privately provided special education services for Student through August 31, 2024, the beginning of the 2024-2025 school year.

**Transition from EI to the District**

24. The process of transitioning an EI student to school-aged programming within the District begins in the fall of the preceding year with families completing an Intent to Register form, thereby allowing the MCIU to release records to the District to begin the transition process. Typically, the District will meet with the family, conduct any necessary reevaluation, and develop an IEP for eligible students well before the end of the school year.

25. In November 2023, in preparation for I.W.'s transition from the MCIU and EI to the District for the 2024-2025 school year, Parents were provided with an Intent to Register but never returned a signed copy.

26. On December 4, 2023, Parent emailed the District's Director of Student Services and Special Education (the "Director") advising her that Parents wanted to create a "pilot

classroom" for Student using the guidance of Student's service providers. While noting that the Family was "well connected" and "3 generations deep[,]" Parent advised the Director that she was "not willing to wait for district placement knowing they will not be able to accommodate [Student's] needs at this time for her to learn." At that time, Parents knew they would not accept any placement offered by the District.

27. Nevertheless, the Director connected Parents with the District's Supervisor of Special Education for grades K-3 and advised Parents to proceed with the registration process so that the District could meaningfully engage in the transition process by completing a comprehensive evaluation of Student and developing appropriate programming for the 2024-2025 school year.

28. On December 7, 2023, Parent responded to the Director emphasizing:

> Your district won't find a placement for her. I have had evaluations done by top people all over the country. Your team will not find anything different. I know what the options are in my hometown, and I know none are specialized enough for my daughter. I do not want to waste 2 more years of her life with checks and balances while I have the answers in my hand.

29. Parents had no intention of enrolling Student in the District for the 2024-2025 school year.

30. The District made repeated requests to Parents to work with them and develop a transition plan or enroll in the District.

31. As of May 2024, Parents still had not completed any of the transition or enrollment paperwork for the District.

32. On May 9, 2024, Parents' advocate emailed the Superintendent of the District seeking to "cut to the chase" and to extend the settlement agreement Parents had with the MCIU.

33. On May 29, 2024, Parents finally registered Student with the District. In the registration paperwork, Parent noted, "Student is not appropriate for school aged education at this time[,]" and confirmed that Parent was registering Student for evaluation purposes only. Parents provided some limited records. Parents would not provide consent for a full release of records from the MCIU. Parents refused to schedule an intake meeting with the District.

34. Throughout June 2024, the District attempted to collaborate with Parents, obtain records, and prepare for the evaluation. Parents refused to engage in the transition process or attend a meeting.

**The District's Reevaluation and IEP Offer**

35. On June 14, 2024, the District sought consent to conduct a comprehensive reevaluation of Student by issuing a permission to reevaluate consent form to Parents.

36. On June 24, 2024, at Parents' request, a meeting was held to discuss specifically the parameters of Student's evaluation.

37. On June 25, 2024, Parents withheld their consent for most of the District's proposed assessments.

38. On August 12, 2024, the District issued its Reevaluation Report ("RR"), which was comprehensive and appropriate under the IDEA and particularly given the consent provided by Parents and their obstruction of the process, including during observations.

39. Parents did not return the requested developmental history form and did not return the evaluating school psychologist's phone call. Additionally, phone calls and emails made by the school psychologist to several of Student's outside private providers were not returned.

40. The District's August 12, 2024 RR found Student eligible for special education under the disability categories OHI, SLI, and Visual Impairment including Blindness.

41. The District's August 12, 2024 RR identified Student's needs and included recommendations for special education programming to address those needs, including nursing services recommendations, speech and language recommendations, vision therapy and O&M recommendations, OT recommendations, and PT recommendations.

42. On August 23, 2024, the Parties held an IEP meeting to review the August 12, 2024 RR and discuss educational programming for Student.

43. The August 23, 2024 IEP adopted and incorporated Student's needs as identified in the August 12, 2024 RR and included all recommendations from the August 12, 2024 RR. It provided for all required and appropriate programming and services.

44. During the August 23, 2024 IEP meeting Parents did not disagree with the District's programming as presented in the IEP, admitting the IEP itself was "appropriate." However, they wanted the IEP implemented in their self-created private placement. Parents requested the District create a program for Student in their home and be provided through their private service providers. The District discussed potential out-of-District placements that could implement the program. This included Overbook which is an approved private school that has expertise in providing services to students with CVI. Parents advised that they would never agree to Overbrook.

45. On August 28, 2024, the District issued a NOREP for full-time learning support, speech and language support and vision support within an out-of-district placement.

46. On August 29, 2024, Parents rejected the District's offered programming via disapproving a Notice of Recommend Educational Placement ("NOREP") and requesting a due process hearing. Parents withheld consent for referrals to be sent.

**Due Process Proceedings**

47. On December 9, 2024, Defendants filed a special education due process complaint against the District alleging the District had failed to offer a free appropriate public education ("FAPE") to Student for the 2024-2025 school year and sought reimbursement for their unilaterally selected private program and placement.

48. The due process hearing addressed a single issue: are Parents entitled to reimbursement for the private, at-home program and placement for the 2024-2025 school year?

49. The District presented testimony from the District's well-qualified staff that was consistent among the witnesses and corroborated by the documentary evidence.

50. Parents presented testimonial evidence regarding Student's private programming that was contradictory, uncorroborated, or even untrustworthy, as it was grounded largely on documentary evidence shown to be misleading.

51. After reviewing the entire record, the hearing officer issued a final decision and order on July 9, 2025 finding in part for Parents and in part for the District.

## CLAIMS

### COUNT I: Appeal of Hearing Officer Decision under IDEA

52. The District incorporates paragraphs 1 through 51 above as if set forth herein at length.

53. In accordance with the holding of the United States Supreme Court in *Schaffer v. Weast*, 546 U.S. 49, 62 (2005), the Parents, as the moving party at the special education administrative due process hearing held the burden of persuasion in this matter. The Supreme Court clarified that when the evidence is in equipoise, the party seeking relief and challenging the program and placement must prove their case by a preponderance of the evidence in order to prevail. *Id.* at 57-58; *see also L.E. v. Ramsey Board of Education*, 435 F.3d 384 (3d Cir. 2006).

8

54. The Hearing Officer erred as a matter of law in not finding that Parents bore the burden of persuasion at the administrative due process hearing.

55. The Hearing Officer erred in concluding that the Least Restrictive Environment ("LRE") requirement of the IDEA did not play a significant role in the determination of an appropriate program and placement for Student. The IDEA mandates that school districts "ensure that a continuum of alternative placements is available to meet the needs of children with disabilities for special education and related services." 34 C.F.R. § 300.115(a). This continuum must include "instruction in regular classes, special classes, special schools, home instruction, and instruction in hospitals and institutions." 34 C.F.R. § 300.115(b). School districts must place students with disabilities in the least restrictive environment ("LRE") in which each student can receive a FAPE. 34 C.F.R. § 300.114. As a result of this erroneous conclusion, the Hearing Officer's decision is not supported by the Administrative Record.

56. The Hearing Officer correctly identified and selected the appropriate legal standard and analysis for reimbursement in this matter, the *Burlington-Carter* test, which has been incorporated into the IDEA. *See Florence County District Four v. Carter*, 510 U.S. 7 (1993); *School Committee of Burlington v. Department of Education*, 471 U.S. 359 (1985); 34 C.F.R. §300.148; *see also*, *Lauren W. v. DeFlaminis*, 480 F.3d 259 (3d Cir. 2007).

57. The IDEA does not require an LEA "to pay for the cost of education including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." 20 U.S.C. § 1412 (a)(10)(C)(i); 34 C.F.R. §300.148.

9

58. The United States Supreme Court has established the three-step *Burlington-Carter* test to determine whether a school district is obligated to reimburse a parent for their unilateral placement of a student at a private school or facility. The first step is an examination of the school district's program and whether it provided a FAPE under the IDEA; the second step is a determination as to the appropriateness of the private placement; and the third step asks whether it would be equitable and fair to require the school district to pay. *See Burlington School Committee v. Massachusetts Department of Education*, 471 U.S. 359 (1985); *Florence County School District v. Carter*, 510 U.S. 7, 15 (1993). The second and third steps only need to be examined if there is a determination that the school district failed to provide a FAPE. *See Florence County School District*, 510 U.S. at 15 (Parents "are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA **and** that the private school placement was proper under the" IDEA (emphasis added)); *see also Lauren W. v. DeFlaminis*, 480 F.3d 259 (3d Cir. 2007).

59. The Hearing Officer abused his discretion and erred as a matter of law by misapplying the correct standard as set forth by the *Burlington-Carter* test. As a result, the Hearing Officer's decision is not supported by the Administrative Record.

60. The Hearing Officer correctly concluded and found that the District has offered a FAPE to Student for the 2024-2025 school year.

61. The Hearing Officer abused his discretion and erred as a matter of law by moving to step two of the *Burlington-Carter* test after correctly concluding that the District's offer was a FAPE for Student. As a result, the Hearing Officer's decision is not supported by the Administrative Record.

62. The Hearing Officer abused his discretion and erred as a matter of law by finding Parents private at-home program and placement was appropriate. As a result, the Hearing Officer's decision is not supported by the Administrative Record.

63. The Hearing Officer abused his discretion and erred as a matter of law by moving to step three of the *Burlington-Carter* test after correctly concluding that the District's offer was a FAPE for Student. As a result, the Hearing Officer's decision is not supported by the Administrative Record.

64. The Hearing Officer correctly found that awarding Parents reimbursement is unfair to the District.

65. However, the Hearing Officer abused his discretion and erred as a matter of law by finding the equities favored Parents and reimbursement. As a result, the Hearing Officer's decision is not supported by the Administrative Record.

66. The Hearing Officer erred in awarding Parents any reimbursement, including for the provision of private services in the home for the 2024-2025 school year and Extended School Year Summer 2025.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff, Lower Merion School District, respectfully requests this Honorable Court:

    a. Assume jurisdiction over this action;

    b. Receive and review the record of the administrative proceedings;

    c. Hear additional evidence, if necessary, to make an accurate, independent decision on the merits, subject to the appropriate standard of review;

   d.  Reverse the Hearing Officer's Decision and Order with respect to the finding that the Parents unilaterally selected private at-home program and placement was appropriate;

   e.  Reverse the Hearing Officer's Decision and Order with respect to the finding that the Equities favored the Parents;

   f.  Reverse the Hearing Officer's Decision and Order with respect to the order awarding 50% reimbursement provision of private services in the home for the 2024-2025 school year and Extended School Year Summer 2025;

   g.  Reverse the Hearing Officer's Decision and Order with respect to the order that the student's pendent placement is in the at-home program;

   h.  Reverse the Hearing Officer's Decision and Order with respect to any finding that may establish the right to reasonable attorney's fees for the Family; and,

   i.  Provide the District with such other and further relief as the Court may deem just and proper under the circumstances.

             Respectfully submitted,

Dated: October 6, 2025        **By:** *Mark J. Burgmann*
                 **MARK J. BURGMANN, ESQUIRE**
                 **PA Attorney ID 320953**
                 **WISLER PEARLSTINE, LLP**
                 460 Norristown Road, Suite 110
                 Blue Bell, PA 19422
                 (610) 825-8400
                 *Attorney for Plaintiff,*
                 *Lower Merion School District*